# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

IN RE NORTH DAKOTA LEGISLATIVE ASSEMBLY
et al.,

*Petitioners.*

On Petition for a Writ of Mandamus to the United States
District Court for the District of North Dakota in Case
No. 3:22-cv-00022-PDW-ARS

## BRIEF OF RESPONDENTS TURTLE MOUNTAIN BAND OF CHIPPEWA INDIANS, et al. IN OPPOSITION TO PETITION FOR A WRIT OF MANDAMUS

Michael S. Carter
Matthew Campbell
NATIVE AMERICAN
RIGHTS FUND
1506 Broadway
Boulder, CO 80302
(303) 447-8760

Bryan L. Sells
THE LAW OFFICE OF
BRYAN L. SELLS
PO Box 5493
Atlanta, GA 31107
(404) 480-4212

*Counsel for Respondents*

Samantha B. Kelty
NATIVE AMERICAN RIGHTS
FUND
950 F Street NW, Ste. 1050
Washington, DC 20004
(202) 785-4166

Mark P. Gaber
Molly E. Danahy
Nicole Hansen
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200

Timothy Q. Purdon*
ROBINS KAPLAN, LLP
1207 West Divide Ave., Ste 200
Bismarck, ND 58501
(701) 255-3000

*\* Counsel for Respondents Turtle
Mountain Band of Chippewa
Indians and Spirit Lake Nation*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

STATEMENT OF ISSUES ..................................................................1

INTRODUCTION ...............................................................................2

FACTUAL AND PROCEDURAL BACKGROUND ...............................3

   I.  Plaintiffs' Rule 45 subpoenas to Legislative Petitioners...................3

   II.  Legislative Petitioners' refusal to comply with the subpoenas duces tecum...6

   III. Plaintiffs' motion to enforce the subpoenas duces tecum ...............8

   IV. Representative Devlin's motion to quash....................................11

LEGAL STANDARD........................................................................13

ARGUMENT ..................................................................................14

   I.  The district court did not clearly and indisputably err in enforcing Plaintiffs' document subpoenas. ........................................14

      A. No privilege protects Legislative Petitioners' documents and communications shared with third parties.............................15

      B. Representative Jones waived his legislative privilege by voluntarily testifying about otherwise privileged information. .................18

      C. The documents ordered to be produced are relevant. .............20

      D. The document production will not impose an undue burden on Legislative Petitioners. ..............................................23

   II.  The district court did not clearly and indisputably err in ordering the production of a privilege log. ..........................................24

   III. The district court did not clearly and indisputably err in ordering the deposition of Representative Devlin. ...........................................25

CONCLUSION ................................................................................31

CERTIFICATE OF COMPLIANCE....................................................34

CERTIFICATE OF SERVICE ...........................................................35

Appellate Case: 23-1600   Page: 2   Date Filed: 04/17/2023 Entry ID: 5265898

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Holden*, 66 F.3d 62 (4th Cir. 1995) ....................................................18

*Almonte v. City of Long Beach*, No. CV 04-4192(JS)(JO), 2005 WL 1796118
    (E.D.N.Y. July 27, 2005) ............................................................................16, 18

*American Trucking Associations, Inc. v. Alviti*, 14 F.4th 76 (1st Cir. 2021).....17, 28

*Bethune-Hill v. Virginia State Board of Elections*,
    114 F. Supp. 3d 323 (E.D. Va. 2015) ................................................................12

*Bone Shirt v. Hazeltine*, 461 F.3d 1011 (8th Cir. 2006) .........................................21

*Cheney v. U.S. District Court for District of Columbia*,
    542 U.S. 367 (2004)...............................................................................13, 14, 31

*Committee for a Fair & Balanced Map v. Illinois State Board of Elections*,
    No. 11 C 5065, 2011 WL 4837508 (N.D. Ill. Oct. 12, 2011).....................19, 26

*Cooper v. Harris*, 581 U.S. 285 (2017) ...................................................................22

*Favors v. Cuomo*, 285 F.R.D. 187 (E.D.N.Y. 2012) ..................................18, 19, 26

*Florida v. United States*, 886 F. Supp. 2d 1301 (N.D. Fla. 2012)...........................19

*Garza v. County of Los Angeles*, 918 F.2d 763 (9th Cir. 1990) ..............................22

*Government of Virgin Islands v. Lee*, 775 F.2d 514 (3d Cir. 1985) .......................19

*Guillen v. LULAC*, 142 S. Ct. 2773 (2022)..............................................................27

*In re Hubbard*, 803 F.3d 1298 (11th Cir. 2015) .........................................17, 25, 29

*Jackson Municipal Airport Authority v. Bryant*, No. 3:16-CV-246-CWR-FKB,
    2017 WL 6520967 (S.D. Miss. Dec. 19, 2017) .................................................16

*Jefferson Community Health Care Centers, Inc. v. Jefferson Parish Government*,
    849 F.3d 615 (5th Cir. 2017) .............................................................................14

*League of United Latin American Citizens v. Abbott*, No. 22-50407,
    2022 WL 2713263 (5th Cir. May 20, 2022)................................................14, 27

*Lee v. City of Los Angeles*, 908 F.3d 1175 (9th Cir. 2018) ..............................17, 29

*Marylanders for Fair Representation, Inc. v. Schaefer*,
    144 F.R.D. 292 (D. Md. 1992) ...........................................................................19

Appellate Case: 23-1600      Page: 3      Date Filed: 04/17/2023 Entry ID: 5265898

*Michigan State A. Philip Randolph Institute v. Johnson*,
No. 16-CV-11844, 2018 WL 1465767 (E.D. Mich. Jan. 4, 2018) .....................16

*Page v. Virginia State Board of Elections*,
15 F. Supp. 3d 657 (E.D. Va. 2014) ...................................................................26

*Perez v. Perry*, No. SA-11-CV-360-OLG-JES,
2014 WL 106927 (W.D. Tex. Jan. 8, 2014) ........................................................16

*Raleigh Wake Citizens Association v. Wake County Board of Elections*,
827 F.3d 333 (4th Cir. 2016) .............................................................................15

*Rodriguez v. Pataki*, 280 F. Supp. 2d 89 (S.D.N.Y. 2003)....................................26

*South Carolina State Conference of NAACP v. McMaster*,
584 F. Supp. 3d 152 (D.S.C. 2022) ............................................................26, 27

*Thornburg v. Gingles*, 478 U.S. 30 (1986) ............................................................21

*Trombetta v. Board of Education, Proviso Township High School District 209*,
No. 02 C 5895, 2004 WL 868265 (N.D. Ill. Apr. 22, 2004) .............................18

*United States v. Brown*, 561 F.3d 420 (5th Cir. 2009) ...........................................21

**Statutes**

52 U.S.C. § 10301 ...................................................................................................20

Appellate Case: 23-1600     Page: 4     Date Filed: 04/17/2023 Entry ID: 5265898

# STATEMENT OF ISSUES

(1)     Did the district court clearly and indisputably abuse its discretion when it affirmed the magistrate judge's order directing the North Dakota Legislature to produce communications with third parties and documents as to which Representative Jones waived his legislative privilege??

(2)     Did the district court clearly and indisputably abuse its discretion when it affirmed the magistrate judge's order directing the North Dakota Legislature to produce a privilege log?

(3)     Did the district court clearly and indisputably abuse its discretion when it affirmed the magistrate judge's order denying Representative Devlin's motion to quash his deposition subpoena?

1

# INTRODUCTION

Upon reading the Petition, one might think that the district court ordered the Petitioners ("Legislative Petitioners") to allow Respondents ("Plaintiffs") to rummage through 64,000 of their private files and disregard the legislative privilege entirely. But this not at all what happened. The Petition is long on hyperbole, but it obscures the exceedingly limited scope of the discovery ordered by the district court.

The district court ordered the production of two categories of documents: (1) documents responsive to the subpoenas that were shared with third parties and that Legislative Petitioners concede are not privileged and (2) documents in former Representative Jones's possession over which he waived legislative privilege by voluntarily testifying about otherwise privileged matters in court. That is it. The quantity? Fewer than 1,000 documents. Although the Petition opens by reciting the alarming figure of "over 64,000 emails," Legislative Petitioners never reveal to this Court that they have already determined that over 62,000 of those emails are "clearly non-responsive." App.221-242; Supp.App.225 (Stay Mot. at 3, ECF 78). Plaintiffs do not seek—nor has the district court ordered—the production of "clearly non-responsive" documents. Legislative Petitioners likewise object to being ordered to

2

log the remaining privileged, *responsive* documents—an ordinary task that subpoena recipients do every day.

The district court also ordered the deposition of a single former state legislator who led the redistricting effort and represented one of the Native American Tribes whose members' voting rights are at issue in this case. It did so based upon the analysis followed by the majority of federal courts to consider the application of legislative privilege to depositions in redistricting cases. This was not clear and indisputable error.

This case is a far cry from the circumstances in which mandamus is appropriate. The district court's discovery order will not grind the Legislature to a halt. Legislative Petitioners misstate, embellish, and obscure the facts and paint a picture of a runaway district court that bears no resemblance to the restrained and reasoned decision below.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Plaintiffs' Rule 45 subpoenas to Legislative Petitioners

Plaintiffs, among whom include the Turtle Mountain Band of Chippewa Indians and Spirit Lake Nation, allege that the 2021 redistricting plan enacted by the North Dakota Legislature violates Section 2 of the Voting Rights Act by cracking and packing Native American voters in northeastern North Dakota, resulting in a reduction from three to one the number of state legislators they have an equal

3

opportunity to elect. Supp.App.016-047 (Compl., ECF 1); Supp.App.071-077 (Supp. Compl., ECF 44).

In support of their claims, Plaintiffs sought to obtain limited third-party discovery from certain individuals involved in enacting and adopting the challenged plan. Plaintiffs served subpoenas duces tecum on North Dakota State Senators Ray Holmberg, Nicole Poolman, and Richard Wardner, State House Representatives William Devlin, Terry Jones, and Michael Nathe, and former legislative counsel Clare Ness (collectively "Legislative Petitioners").[1] App.007-055. The subpoenas sought documents regarding the legislative redistricting process and its relation to North Dakota's Native American voters and Tribes. *See*, *e.g.*, App.012-013. The subpoenas sought only documents created between January 1, 2020 and the present. *See*, *e.g.*, App.012.

Legislative Petitioners all played integral roles in enacting the 2021 Redistricting Plan and therefore are likely to have discoverable information relevant to Plaintiffs' claims. Representative Devlin and Senator Holmberg served as Chair

---

[1] Of these individuals, only Representative Nathe remains in the North Dakota Legislature. *See* 68th Legislative Assembly Members, North Dakota Legislative Assembly, https://www.ndlegis.gov/assembly/68-2023/regular/members. Representative Devlin and Senator Wardner have since retired from the Legislature and Representative Jones was defeated in his 2022 reelection campaign. Senator Holmberg resigned in April 2022 and Senator Poolman did not run for re-election in 2022. Ms. Ness left the Legislative Council in May 2022 and now serves in the Attorney General's office. Pet. at 2 n.1.

4

and Vice Chair of the Redistricting Committee, respectively, with Senator Poolman and Representative Nathe serving as Committee members. Supp.App.214 (Redistricting Committee Meeting Minutes, ECF No. 60-2). Moreover, Representative Devlin, from whom Plaintiffs seek deposition testimony as well as documents, represented the state legislative district containing the Spirit Lake Reservation during the previous redistricting cycle, Supp.App.210 (Opp'n to Mot. to Quash at 7, ECF 56), and thus likely has nonprivileged information regarding the electoral conditions and campaigns in the region, as well as his own responsiveness to Native American voters in his district. Senator Wardner was the Chair of the Tribal State Relations Committee, on which former Representative Jones also served, and both heard testimony in that Committee from Tribal Leaders and Tribal Members on the redistricting process. Supp.App.215-217, 218-220, 221-222 (Minutes of Tribal State Relations Committee Meetings, ECF 60-3, 60-13, 60-14).

Representative Jones also testified before the Redistricting Committee and has funded a separate lawsuit challenging the 2021 plan, in which he voluntarily appeared and testified about the Legislature's intent in enacting the map and his conversations with other legislators and legislative council staff regarding the same. *See* Supp.App.101 (Defs. Rule 26(a)(1) Disclosures, ECF 47-1 ¶ 43); Supp.App.111-149 (Walen PI Hrg. Tr., ECF 47-5); Supp.App.179-202 (Walen Depo. Tr., ECF 47-7); *see also* Supp.App.082-085 (Mot. to Enforce at 5-8, ECF 47).

5

Finally, Ms. Ness served as Senior Counsel at the North Dakota Legislative Council during the 2021 Redistricting Process. Supp.App.096 (Defs. Rule 26(a)(1) Disclosures, ECF 47-1 ¶ 11). The North Dakota Secretary of State, who is the defendant in the underlying suit, identified Legislative Petitioners as having information relevant to this matter in their initial disclosures. Supp.App.094, 101, 102 (Defs. Rule 26(a)(1) Disclosures ECF 47-1 ¶¶ 3, 43, 53).

## II. Legislative Petitioners' refusal to comply with the subpoenas duces tecum

On October 14, 2022, Legislative Petitioners, through counsel, provided limited objections to the subpoenas. *See* App.120-124. Specifically, Legislative Petitioners objected (1) that the subpoenas imposed an undue burden to the extent that they sought information about the redistricting process that was already available to Plaintiffs via the Redistricting Website, (2) that the October 31 deadline to respond was unduly burdensome because it did not provide sufficient time to identify which responsive documents and communications in the Legislative Petitioners' possession were non-privileged and not already publicly available, and (3) that the requested documents were subject to the legislative, deliberative process, and attorney-client privileges. *See id*.

Plaintiffs subsequently confirmed they were not seeking publicly available material from the Redistricting Website, and after conferring with his clients, Legislative Petitioners' counsel indicated that two weeks would be a sufficient time

to collect the documents and provide a privilege log. Supp.App.107-110 (Nov. 9 Email from S. Porsborg, ECF 47-3). Under this agreement, the privilege log should have been produced to Plaintiffs before the Thanksgiving holiday, on November 23, 2022. *See id*.

Legislative Petitioners then developed a list of fourteen "keywords" and conducted searches of Legislative Petitioners' emails and text messages. App.221-242. The "keywords" utilized in this search were: "1504" (the bill number), "Redistricting Map," "Subdistrict," "District," "Race," "Tribal," "Native American," "Indian," "Reservation," "Voting Rights Act," "VRA," "Demographic," "Criteria," and "Training." Supp.App.245 (Stay Reply at 2, ECF 86). Legislative Petitioners have since admitted that these keyword searches were not intended to actually identify documents and communications responsive to the subpoenas, but rather were intended to "substantiate the [Legislative Petitioners'] undue burden objection." Supp.App.246 (Stay Reply at 3, ECF 86). Legislative Petitioners' keyword search resulted in 64,849 keyword hits across all eight searches. App.221-242.

After a cursory review of the keyword search results, Legislative Petitioners determined that approximately 62,200 of the keyword hits involved documents and communications that were "clearly non-responsive." App.221-242; Supp.App.225 (Stay Mot. at 3, ECF 78). Of the remaining 2,600 potentially responsive documents

7

and communications, Legislative Petitioners determined that approximately 580 involved third parties and 2,060 involved other legislators or legislative council staff. App.221-242; Supp.App.239 (Opp. to Stay at 4, ECF 84). Legislative Petitioners produced the tallies of their search results to Plaintiffs in a document titled "Privilege Log" on December 1, 2022 and a document titled "Supplemental Privilege Log" on December 30, 2022 (collectively "Supplemental Objections"). App.221-242.

### III.    Plaintiffs' motion to enforce the subpoenas duces tecum

In light of Legislative Petitioners' refusal to take any additional steps to comply with their obligations under the subpoenas, Plaintiffs moved to enforce the subpoenas. Supp.App.078-092 (Mot. to Enforce, ECF 47). In their motion, Plaintiffs made clear that they sought *only two categories of documents*, as well as a privilege log for the remaining responsive documents containing sufficient detail to evaluate Legislative Petitioners' claims of privilege. First, Plaintiffs sought to obtain the approximately 580 documents and communications that Legislative Petitioners had identified as involving non-legislators and non-legislative council staff—*i.e.*, documents that had been shared with third parties and thus were not protected by legislative privilege. Supp.App.085-086 (Mot. to Enforce at 8-9, ECF 47); Supp.App.238-239 (Opp. to Stay at 3-4, ECF 84). Second, Plaintiffs sought to obtain approximately 200 documents and communications identified as in the possession of Representative Jones, on the grounds that Representative Jones waived privilege

8

over these communications by voluntarily appearing and testifying publicly about the topics on which Plaintiffs sought discovery. Supp.App.082-085 (Mot. to Enforce at 5-8, ECF 47) (detailing Representative Jones's public statements on the relevant topics); Supp.App.238-239 (Opp. to Stay at 3-4, ECF 84). Finally, Plaintiffs sought a privilege log with respect to the remaining approximately 1,860 responsive documents Legislative Petitioners sought to withhold on the basis of legislative privilege. Supp.App.090 (Mot. to Enforce at 13, ECF 47); Supp.App.238-239 (Opp. to Stay at 3-4, ECF 84).

On February 10, 2023, the magistrate judge granted Plaintiffs' motion to enforce their subpoenas against Legislative Petitioners. The magistrate judge rejected the assertion that the legislative privilege affords Legislative Petitioners absolute immunity from civil discovery and reached the unremarkable conclusion that "the state legislative privilege does not protect information a legislator discloses to a third party." App.177. The magistrate judge ordered Legislative Petitioners to produce the "approximately 581 communications between them and a third party." App.178. The magistrate judge further found that during the preliminary injunction hearing in the *Walen* case, Representative Jones "testified at length about the development of the challenged legislation" including "about his motivations, his conversations with other legislators, staff, outside advisors, and attorneys, and the work of the redistricting committee." App.179. The magistrate judge found that

9

Representative Jones had waived his own legislative privilege with respect to the documents sought. App.180. The magistrate judge found that Representative Jones could nonetheless withhold documents on the basis of another legislator's assertion of legislative privilege but must provide a privilege log with respect to any documents withheld on that basis. App.180. Finally, the magistrate judge ordered Legislative Petitioners to produce a privilege log for any remaining documents withheld on the basis of privilege. In finding for Plaintiffs, the magistrate judge expressly determined that the documents sought were relevant to Plaintiffs' claims and that compliance would not impose an undue burden on Legislative Petitioners, because there were "at most 2,655 documents at issue," and Legislative Petitioners had failed to provide sufficient information to substantiate their claim that it would take 640 hours to review such a small number of documents. App.185-186.

Legislative Petitioners appealed and the district court affirmed the decision of the magistrate judge, finding that the order was not clearly erroneous or contrary to law. App.212. With respect to undue burden, the district court made factual findings as to Legislative Petitioners' alleged burden in complying with the subpoena, finding that the 640-hour estimate provided by Legislative Petitioners "is contradicted by certain facts in the record, including that some documents have already been identified and that many documents are likely duplicative." App.213. Finally, the district court further noted that Legislative Petitioners did not raise the issue of

10

Representative Jones' waiver on appeal but affirmed that he had waived his privilege. App.214.

Subsequently, Legislative Petitioners sought a stay of the courts' orders pending resolution of this writ proceeding. Supp.App.223-235 (Mot. for Stay, ECF 78). In the process of briefing the stay, Legislative Petitioners admitted that the numbers they had provided to Plaintiffs and the Court were generated solely to "substantiate" the alleged burden of complying with the subpoenas. Supp.App.246 (Stay Reply at 3, ECF 86). Legislative Petitioners further asserted in their claim that it would take 640 hours to review the documents at issue and produce a privilege log, which included the time it would take to review and log the 62,000 documents Legislative Petitioners had already determined to be "clearly non-responsive"—a category of documents that Plaintiffs have not sought and that the district court has not ordered Legislative Petitioners to produce or log. Supp.App.238-239 (Opp. to Stay at 3-4, ECF 84). Finally, Legislative Petitioners admitted that they did not save any of the results of their initial search or initial review, and thus that their claim of "undue burden" also rested on an estimate of hours necessary to do these tasks again. Supp.App.246 (Stay Reply at 3, ECF 86).

## IV. Representative Devlin's motion to quash

After serving the subpoenas duces tecum, Plaintiffs served a deposition subpoena on then-Representative Devlin. App.004-006. The North Dakota

11

Legislative Assembly and Representative Devlin moved to quash the subpoena on the grounds that it sought "information protected by legislative privilege and/or attorney privilege," App.061, that the legislative privilege provides Representative Devlin with absolute immunity from civil discovery, App.062, and that any testimony would be irrelevant to Plaintiffs' claims, App.072. The magistrate judge carefully parsed the history of the legislative privilege and its application in the redistricting context and rejected these arguments. App.079-100. The court considered and distinguished each of the cases relied on by Legislative Petitioners. App.089-092. Ultimately, the magistrate judge concluded that "[n]early all cases to consider the issue, including those cited by the Assembly, recognize the state legislative privilege as qualified." App.93. The magistrate judge applied a five-factor test routinely used by federal courts evaluating assertions of legislative privilege in the redistricting context and found that Plaintiffs' need for Representative Devlin's testimony outweighed Legislative Petitioners' interest in non-disclosure. App.094-097.

Representative Devlin and the Legislative Assembly appealed the order and the district court affirmed. App.113. The district court found that the order was "not clearly erroneous or contrary to law," and that the "majority" of courts to consider the issue conclude "as Judge Senechal did here, that 'the privilege is a qualified one in redistricting cases.'" App.115 (quoting *Bethune-Hill v. Va. State Bd. of Elections*,

12

114 F. Supp. 3d 323, 336-37 (E.D. Va. 2015)). The court further concluded that "[t]he qualified balancing analysis (five-factor test) is a better fit in this type of redistricting case, as opposed to the per se rule and absolute bar the Assembly advocates for" because "[t]his case requires at least some judicial inquiry into the legislative intent and motivation of the Assembly." App.116. As such, "[a]n absolute bar on the testimony of members of the Assembly makes little sense and could preclude resolution on the merits of the legal claim." App.116. In so doing, the court expressly distinguished the caselaw relied on by Legislative Petitioners. App. 116.

On April 13, 2023, the district court denied Legislative Petitioners' motion for a stay pending resolution of this mandamus proceeding and ordered Legislative Petitioners to produce the documents within 10 days, the privilege log within 14 days, and to make arrangements for Representative Devlin's deposition by April 28, 2023. Supp.App.253-256 (ECF 90). In doing so, the district court highlighted the importance of prompt resolution of this issue in light of the rapidly approaching June 12 trial in this matter. *Id.*

## LEGAL STANDARD

Mandamus is an "extraordinary remedy," the invocation of which is only justified in "exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion." *Cheney v. U.S. District Court for Dist. of Columbia*, 542 U.S. 367, 380 (2004) (internal citations and quotation marks omitted). "Before

13

the 'drastic and extraordinary' remedy of a writ may issue, the petitioner must show that he has no other adequate means to obtain relief, that his right to issuance of the writ is clear and indisputable, and that the writ is appropriate under the circumstances." *In re Grand Jury Process, Doe*, 814 F.3d 906, 907 (8th Cir. 2015) (quoting *Cheney*, 542 U.S. at 380-81).

## ARGUMENT

### I. The district court did not clearly and indisputably err in enforcing Plaintiffs' document subpoenas.

The district court did not err in enforcing Plaintiffs' document subpoenas, much less commit clear and indisputable error. "[T]he legislative privilege for state lawmakers is, at best, one which is qualified." *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Parish Gov't*, 849 F.3d 615, 624 (5th Cir. 2017); *see also League of United Latin Am. Citizens v. Abbott*, No. 22-50407, 2022 WL 2713263, at *1 (5th Cir. May 20, 2022) ("*LULAC*") ("Both [the Fifth Circuit] and the Supreme Court have confirmed that the state legislative privilege is not absolute.").

Although one would not know it from reading the Petition, the district court's order granting Plaintiffs' motion to enforce their documents subpoenas was exceedingly narrow: (1) Legislative Petitioners were ordered to produce a small universe of documents and communications shared with third parties and thus by definition not privileged, (2) Representative Jones was ordered to produce all responsive communications because he voluntarily waived legislative privilege by

14

disclosing otherwise privileged information during his preliminary injunction testimony in a related case pending in the district court, and (3) Legislative Petitioners were ordered to produce a privilege log regarding the remaining responsive documents over which they assert legislative or attorney-client privilege. The district court's order was unremarkable in each respect and certainly not indisputably and clearly wrong, as would be required for a writ of mandamus to issue.

### A. No privilege protects Legislative Petitioners' documents and communications shared with third parties.

No privilege—legislative or otherwise—protects the documents and communications that Legislative Petitioners shared with third parties. This concept is so foundational that it is often not even litigated in redistricting cases. *See, e.g.*, *Raleigh Wake Citizens Ass'n v. Wake Cnty. Bd. of Elections*, 827 F.3d 333, 339 n.4 (4th Cir. 2016) (noting that legislators in redistricting case refused to produce internal legislative documents but agreed to produce "external communications between legislators and third parties"). Legislative Petitioners do not dispute that the documents they share with third parties are nonprivileged. Instead, they contend that "[w]hen properly applied, legislative privilege protects lawmakers from responding to discovery in civil actions." Pet. at 10. But this sweeping assertion of immunity from discovery that seeks only nonprivileged documents and communications has no basis in law. Put simply, no privilege extends to nonprivileged material.

15

It is therefore unsurprising that federal courts have routinely held that the legislative privilege does not shield from production documents shared with third parties. *See, e.g.*, *Perez v. Perry*, No. SA-11-CV-360-OLG-JES, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) ("To the extent, however, that any legislator, legislative aide, or staff member had conversations or communications with any outsider (e.g. party representatives, non-legislators, or non-legislative staff), any privilege is waived as to the contents of those specific communications."); *Michigan State A. Philip Randolph Inst. v. Johnson*, No. 16-CV-11844, 2018 WL 1465767, at *7 (E.D. Mich. Jan. 4, 2018) (holding "communications between legislators or their staff and any third party are not protected by the legislative privilege."); *Jackson Mun. Airport Auth. v. Bryant*, No. 3:16-CV-246-CWR-FKB, 2017 WL 6520967, at *7 (S.D. Miss. Dec. 19, 2017) ("The Court finds that to the extent otherwise-privileged documents or information have been shared with third parties, the privilege with regard to those specific documents or information has been waived."); *Almonte v. City of Long Beach*, No. CV 04-4192(JS)(JO), 2005 WL 1796118, at *3 (E.D.N.Y. July 27, 2005) ("Legislative and executive officials are certainly free to consult with political operatives or any others as they please, and there is nothing inherently improper in doing so, but that does not render such consultation part of the legislative process or the basis on which to invoke privilege."). Legislative

Appellate Case: 23-1600    Page: 20    Date Filed: 04/17/2023 Entry ID: 5265898

Petitioners ignore this unbroken line of precedent and offer no explanation for why this basic principle does not control here.

Moreover, the cases Legislative Petitioners cite do not support their contention that the legislative privilege somehow protects from disclosure concededly nonprivileged documents. *See* Pet. at 10-15. In *In re Hubbard*, for example, the Eleventh Circuit distinguished the facts before it from another case in which discovery was permitted because "[s]ome of the relevant information sought by the subpoenas in the [other] case could have been outside of any asserted privilege." 803 F.3d 1298, 1311 (11th Cir. 2015). With respect to the subpoenas issued in *Hubbard*, "[n]one of the relevant information sought . . . could have been outside of the legislative privilege." *Id.* Likewise, in *American Trucking Associations, Inc. v. Alviti*, the First Circuit explained at the outset of its decision granting a mandamus petition that "no party disputes that, if the legislative privilege applies, the discovery requested by those subpoenas falls within its scope." 14 F.4th 76, 87 (1st Cir. 2021). And in *Lee v. City of Los Angeles*, there was no document subpoena and no request for nonprivileged documents. 908 F.3d 1175, 1178 (9th Cir. 2018). Legislative Petitioners are thus wrong to contend that this Court would create a circuit split by denying their Petition.

Here, Legislative Petitioners have been ordered to produce a small subset of responsive documents (approximately 580), which *they do not dispute* are

17

nonprivileged because they were shared with third parties. The district court did not err—let alone clearly and indisputably err—by ordering the production of these documents. No precedent supports the sweeping immunity from producing *nonprivileged* documents that Legislative Petitioners assert.

**B.** **Representative Jones waived his legislative privilege by voluntarily testifying about otherwise privileged information.**

Representative Jones, who no longer serves in the Legislature, waived his legislative privilege by voluntarily testifying in a related case about his and other legislators' motives and purposes in enacting the redistricting legislation. Waiver of legislative privilege "need not be 'explicit and unequivocal,' and may occur either in the course of litigation when a party testifies as to otherwise privileged matters, or when purportedly privileged communications are shared with outsiders." *Favors v. Cuomo*, 285 F.R.D. 187, 211-12 (E.D.N.Y. 2012) (quoting *Almonte*, 2005 WL 1796118, at *3-4). This is a settled proposition. *See, e.g.*, *Alexander v. Holden*, 66 F.3d 62, 68 n.4 (4th Cir. 1995) (holding that legislative privilege was "clearly waived" where legislators "testified extensively as to their motives in depositions with their attorney present, without objection"); *Trombetta v. Bd. of Educ., Proviso Twp. High Sch. Dist. 209*, No. 02 C 5895, 2004 WL 868265, at *5 (N.D. Ill. Apr. 22, 2004) (explaining that legislative privilege "is waivable and is waived if the purported legislator testifies, at a deposition or otherwise, on supposedly privileged matters"); *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11

18

C 5065, 2011 WL 4837508, at *10 (N.D. Ill. Oct. 12, 2011) ("As with any privilege, the legislative privilege can be waived when the parties holding the privilege share their communications with an outsider."); *see also Government of Virgin Islands v. Lee*, 775 F.2d 514, 520 n.7 (3d Cir. 1985); *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 298 (D. Md. 1992). The reason for this rule is straightforward: the legislative privilege may not be used as both shield and sword whereby a legislator "strategically waive[s] it to the prejudice of other parties." *Favors*, 285 F.R.D. at 212.

Representative Jones waived any legislative privilege when he voluntarily inserted himself into litigation challenging the Plan. Specifically, Representative Jones testified at the preliminary injunction hearing in the related *Walen* litigation pending in the district court about his motivations, his private conversations with other legislators, legislative staff, and outside advisors and attorneys, and his understanding of what analyses the Redistricting Committee or Legislative Council did or did not conduct. "[B]y voluntarily testifying, the legislator waives any legislative privilege on the subjects that will be addressed in the testimony." *Florida v. United States*, 886 F. Supp. 2d 1301, 1302 (N.D. Fla. 2012). Representative Jones likewise waived privilege over matters related to drawing of subdistricts when he voluntarily contacted potential plaintiffs and discussed the legality of subdistricts in Legislative Districts 4 and 9, the latter of which is at issue in this case. *See*

19

Supp.App.158, 185-186, 188 (Henderson Depo. Tr. at 25:12-27:23, ECF 47-6; Walen Depo. Tr. at 19:2-14, 21:10-22:14, 29:11-30:20, ECF 47-7). Representative Jones may not strategically waive the privilege by revealing only that information he deems beneficial to his cause and then refuse to produce documents and communications and preclude the parties from probing his public, non-legislative statements on those matters.

Legislative Petitioners do not dispute that Representative Jones waived legislative privilege by voluntarily testifying in *Walen*, nor did they dispute that waiver argument before the district court. Instead, they appear to rely exclusively upon the same sweeping immunity argument they advance with respect to the third-party documents—that Representative Jones is somehow simply immune to civil discovery. The case law is to the contrary, and the district court did not clearly or indisputably err by so concluding.

### C. The documents ordered to be produced are relevant.

The documents the district court ordered Legislative Petitioners to produce—limited in number and scope—are relevant to Plaintiffs' claims. Although much of the evidence in a VRA Section 2 case focuses on voting patterns and mapping, Plaintiffs must also prove that under the totality of circumstances, the electoral process does not provide Native American voters an equal opportunity to participate. 52 U.S.C. § 10301. Among the totality of circumstances factors courts consider

20

probative are (1) whether there is a lack of responsiveness of legislators to Native American voters and (2) whether "the policy underlying the jurisdiction's use of the current boundaries [is] tenuous." *Bone Shirt v. Hazeltine*, 461 F.3d 1011, 1022 (8th Cir. 2006). The documents Legislative Petitioners have been ordered to produce bear on both these considerations. Indeed, both Representative Devlin and Representative Jones represented districts containing large Native American populations, making documents that bear on their responsiveness (or lack thereof) particularly relevant. And the documents may also bear on the tenuousness of the Legislature's justification for the district lines.

Legislative Petitioners contend that the—again, nonprivileged—documents that they have been ordered to produce are not relevant or needed because proof of an "illicit motive" is not required to establish a violation of Section 2 of the VRA. *See, e.g.*, Pet. at 26-27.[2] Although a Section 2 violation may be proven based upon discriminatory results alone, *see Thornburg v. Gingles*, 478 U.S. 30, 43-44 (1986), a redistricting plan that was the product of intentional discrimination *also* independently violates Section 2, *see, e.g.*, *United States v. Brown*, 561 F.3d 420, 432 (5th Cir. 2009) (explaining that a Section 2 violation occurs upon a showing that action was taken "with an intent to discriminate *or* [that it] produce[s] discriminatory

---

[2] The phrase "illicit motive" appears ten times in the Petition. Notably, it was Legislative Petitioners—not Plaintiffs, the district court, or the magistrate judge— who introduced this phrase into this matter.

results"); *Garza v. County of Los Angeles*, 918 F.2d 763, 769 (9th Cir. 1990) (holding that proof of discriminatory intent establishes Section 2 violation and loosens evidentiary requirements that otherwise apply for only discriminatory results showing).

Legislative Petitioners also contend that the discovery is irrelevant because the statements of a single legislator cannot be imputed to the Legislature as a whole. Pet. at 19-20. But the Supreme Court, recognizing the technical nature of redistricting in which there is usually a primary mapdrawer and a process led by certain legislative leaders, has accorded substantial weight to the actions and motives of the central players in assessing the purpose motivating a redistricting plan. *See, e.g.*, *Cooper v. Harris*, 581 U.S. 285, 313-15 (2017) (focusing racial gerrymandering analysis on actions and motives of mapdrawing consultant and the two legislative leaders in charge of redistricting committees). Moreover, the fact that Plaintiffs limited the *custodians* from whom they sought documents does not mean the subpoenaed documents will not shed light on other legislators' actions or statements. In any event, the responsiveness and tenuousness totality-of-circumstances considerations do not require proof related to the Legislature as a whole.

The district court did not err—let alone clearly and indisputably—in concluding that the documents and communications were relevant to Plaintiffs' claims.

**D. The document production will not impose an undue burden on Legislative Petitioners.**

The district court's order requiring production of the two categories of nonprivileged documents (which, by Legislative Petitioners' own count, number around 780) and a log of responsive documents over which they assert legislative or attorney-client privilege (approximately 1800 additional documents) will not impose an undue burden on Legislative Petitioners, and the district court was not clearly and indisputably wrong in so concluding.

Although Legislative Petitioners repeatedly mention that their keyword search yielded 64,849 emails, *see, e.g.*, Pet. at 21, they neglect to inform this Court that they were able to quickly determine that approximately 62,200 of those documents and communications were "clearly non-responsive." App.221-242; Supp.App.225 (Stay Mot. at 3, ECF 78). This is not surprising, because Legislative Petitioners appear to have devised their search terms in order to maximize the number of hits so that they could claim the burden was great.[3] Supp.App.246 (Stay Reply at 3, ECF 86) (stating that the purpose of the keyword search was to substantiate their forthcoming claim of an undue burden, not to actually find and isolate responsive documents). To the

---

[3] As one example, Legislative Petitioners searched for the word "training"—without any connecting words or limiting rules—because Plaintiffs had sought documents related to VRA trainings. Supp.App.245 (Stay Reply at 2, ECF 86). Obviously such an open-ended search will yield a large number of irrelevant and non-responsive returns.

23

extent Legislative Petitioners need to re-run their searches because they failed to preserve the initial results, *see* Supp.App.246 (Stay Reply at 3, ECF 86), modern litigation technology will ease their task, with document review platforms capable of narrowing search results, eliminating non-responsive hits, and de-duplicating results. And were it not already clear, Plaintiffs do not expect—and the district court did not order—Legislative Petitioners to produce or log documents that they deem "clearly non-responsive."

In any event, given the fact that Legislative Petitioners' initial review allowed them to quickly conclude that only 2,600 documents were responsive, it is difficult to understand Legislative Petitioners' exclamations that the task they face in producing the two categories of nonprivileged documents and logging the remaining responsive documents will somehow take 640 hours.[4] The district court did not clearly and indisputably err in rejecting this unsupported and nonsensical contention.

## II. The district court did not clearly and indisputably err in ordering the production of a privilege log.

The district court did not clearly and indisputably err in ordering the production of a privilege log for responsive documents withheld on the basis of

---

[4] Even to the extent Legislative Petitioners must retrace their earlier steps, the burden imposed by their own failure to preserve the results of their initial review cannot be laid at Plaintiffs' feet. Moreover, given the speed with which they were able to conduct their initial cursory review and identify 62,000 documents as "clearly non-responsive," App.221-242; Supp.App.225 (Stay Mot. at 3, ECF 78), Legislative

Appellate Case: 23-1600    Page: 28    Date Filed: 04/17/2023 Entry ID: 5265898

privilege. Legislative Petitioners, citing the Eleventh Circuit's decision in *Hubbard*, contend that it is "well-settled" that privilege logs are not required when legislative privilege is claimed. Pet. at 22-23. But in declining to order production of a privilege log, the Eleventh Circuit emphasized that in that case "[n]one of the relevant information sought in this case could have been outside of the legislative privilege." *Hubbard*, 803 F.3d at 1311. In this way, *Hubbard* distinguished a Third Circuit case that had required production of a privilege log because the subpoenas in that case sought information "outside of any asserted privilege." *Id.* Such is the case here. Legislative Petitioners have acknowledged that responsive third-party communications over which there is no privilege are among the documents they possess and have conceded that Representative Jones has waived privilege. The district court did not clearly and indisputably err by ordering the production of a log of privileged, responsive documents in this case. Such a log is necessary to ensure that nonprivileged documents are not inadvertently or improperly withheld.

## III. The district court did not clearly and indisputably err in ordering the deposition of Representative Devlin.

The district court did not clearly and indisputably err in ordering the deposition of Representative Devlin. Representative Devlin—who is no longer serving in the Legislature—chaired the redistricting committee and also served as

---

Petitioners have provided no explanation for how redoing this step will somehow take 640 hours.

Appellate Case: 23-1600    Page: 29    Date Filed: 04/17/2023 Entry ID: 5265898

the elected representative for District 23, which until the 2021 redistricting cycle included the Spirit Lake Nation. The district court carefully considered the case law and adopted the approach that the majority of federal courts have followed in assessing whether legislative privilege protects a legislator from sitting for deposition. "Most courts that have conducted this qualified privilege analysis in the redistricting context have employed a five-factor balancing test imported from deliberative process privilege case law." App.115; *see, e.g.*, *South Carolina State Conference of NAACP v. McMaster*, 584 F. Supp. 3d 152, 161 (D.S.C. 2022); *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 101 (S.D.N.Y. 2003); *Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *7; *Favors*, 285 F.R.D. at 209-10; *Page v. Va. State Bd. of Elections*, 15 F. Supp. 3d 657, 666 (E.D. Va. 2014). These factors are "(1) the relevance of the evidence sought, (2) the availability of other evidence, (3) the seriousness of the litigation, (4) the role of the State, as opposed to individual legislators, in the litigation, and (5) the extent to which discovery would impede legislative action." *South Carolina State Conference of NAACP*, 584 F. Supp. 3d at 161.[5]

Legislative Petitioners contend that the majority of the federal courts are wrong and that the district court clearly and indisputably erred in following them.

---

[5] There, the court rejected the argument advanced by Legislative Petitioners here that only criminal cases involve the potential for legislative privilege to give way. "It is not the simple distinction between 'criminal' and 'civil' cases which

26

Instead, Legislative Petitioners contend that the same absolute immunity from discovery that they believe shields them from producing *nonprivileged* documents likewise precludes Plaintiffs from deposing Representative Devlin on *any topic*—privileged or not. But that is not the law.

Just last year, the Supreme Court denied an emergency motion for a stay of a district court's order requiring a host of Texas state legislators to sit for depositions in the pending Texas redistricting litigation. *See Guillen v. LULAC*, 142 S. Ct. 2773 (2022). The Fifth Circuit, which had earlier denied the requested stay, emphasized that the legislative privilege is not absolute, and that "there are likely to be relevant areas of inquiry that fall outside of topics covered by state legislative privilege." *LULAC*, 2022 WL 2713263, at *1 (internal quotation marks omitted). Moreover, the Fifth Circuit approved the protections put in place by the district court, under which the legislators could state their legislative privilege objection, would be required to

---

determines the availability of this evidentiary privilege, but rather, the importance of the federally created public rights at issue. And when cherished and constitutionally rooted public rights are at stake, legislative evidentiary privileges must yield." *South Carolina State Conference of the NAACP*, 584 F. Supp. 3d at 162.

27

answer, and such answers would be treated as confidential until the district court could rule on the claim of privilege. *Id.* at *2.[6]

Legislative Petitioners contend that the Fifth Circuit's decision in *LULAC* is inapposite because the United States is a party to that case. Pet. at 14-15. But if that were a factor in the decision making, neither the Fifth Circuit nor the Supreme Court said as much. Moreover, a host of private parties issued their own deposition subpoenas in that case. In any event, the United States has entered an appearance in this case, filing a Statement of Interest early in the proceeding highlighting the importance of private enforcement of Section 2. Supp.App.052 (ECF 25 at 5). There is no principled reason to prohibit legislator depositions in a Section 2 case brought by sovereign Tribes while allowing them in cases brought by private individuals whose case happens to be consolidated with one brought by the United States.

Legislative Petitioners also overstate the First, Ninth, and Eleventh Circuit's rulings declining requests for legislator depositions. In *American Trucking*, a case about the dormant commerce clause, the First Circuit explained that it was not creating a categorical rule and that "a state's legislative privilege might yield in a

---

[6] Legislative Petitioners object that the district court did not "place[] any limits or parameters on Devlin's testimony." Pet. at 4. But Legislative Petitioners *did not request any*. The district court can hardly have erred—let along clearly and indisputably—by failing to impose limits or parameters that Legislative Petitioners never sought. Plaintiffs would not have objected, for example, to the procedure imposed by the *LULAC* court had Legislative Petitioners requested it.

civil suit brought by a private party in the face of an important federal interest[.]" 14 F.4th at 90. In *Lee*, the Ninth Circuit rested its conclusion on the fact that "the factual record in this case falls short" of demonstrating the intrusion into the legislative process was warranted. 908 F.3d at 1188. Likewise, the Eleventh Circuit in *Hubbard* emphasized that its ruling was based in large part on the fact that the underlying claim was meritless, that its holding was "limited," and that its "decision should not be read as deciding whether, and to what extent, the legislative privilege would apply to a subpoena in a private civil action based on a different kind of constitutional claim than the one [plaintiffs] made here." *Hubbard*, 803 F.3d at 1312 n.13.

Moreover, the Eleventh Circuit emphasized that "[o]ne of the privilege's [principal] purposes is to ensure that lawmakers are allowed to focus on their public duties." *Hubbard*, 803 F.3d at 1310 (internal quotation marks omitted). "That is why the privilege extends to discovery requests . . . complying with such requests detracts from the performance of official duties." *Id.* But Representative Devlin has retired from the Legislature; his deposition in this case will not distract from any public duties.

Even if the Court were to conclude that the district court clearly and indisputably erred in deciding to apply the five-factor test that most federal courts

29

have applied in redistricting cases,[7] that would still not be a basis for precluding Plaintiffs from deposing Representative Devlin. Representative Devlin has run as a candidate for the Legislature numerous times in a district that contained the Spirit Lake Reservation. He has relevant knowledge and information about the electoral conditions and campaign environment that bear on the totality of circumstances factors in this case. That testimony has nothing to do with any topic protected by legislative privilege.

Contrary to Legislative Petitioners' hyperbole, the district court's order requiring them to produce a small subset of concededly nonprivileged documents and requiring Representative Devlin to sit for deposition will not have "drastic policy implications." Pet. at 18. Legislative Petitioners warn that the district court's ruling will open the floodgates of private litigants seeking to harass the Legislature. *Id.* But the district court's ruling was specific to the context of redistricting litigation—a once a decade occurrence (if it occurs at all). More likely, the district court's order will have no effect beyond this case.

Legislative Petitioners also contend that the district court's order will require state lawmakers to split their time between legislating and "responding to discovery requests from their political adversaries in federal court." Pet. at 6. But this claim is

---

[7] Legislative Petitioners do not contend that the district court erred in how it weighed the five factors—they merely object to the use of the test at all.

30

particularly puzzling because only one of the Legislative Petitioners still serves in the North Dakota Legislature. *See supra* n.1. Moreover, the General Assembly's characterization of two sovereign Tribes and three individual Native American voters as its "political adversaries" is, to say the least, startling. This sentiment only underscores the relevance of the discovery sought in this case and the merits of Plaintiffs' underlying VRA claim.

The district court did not engage in "a judicial usurpation of power or a clear abuse of discretion" in ordering Representative Devlin to sit for deposition. *Cheney*, 542 U.S. at 380. Rather, the court carefully considered Legislative Petitioners' arguments, the relevant law, and adopted the approach followed by the majority of federal courts. Doing so cannot possibly have been clear and indisputable error.

## CONCLUSION

Legislative Petitioners have been ordered to produce a handful of nonprivileged documents that were either shared with third parties or over which privilege was waived by Representative Jones's voluntary testimony in court. They have been ordered to produce a privilege log covering approximately 1,800 documents. And former Rep. Devlin has been ordered to sit for deposition, including regarding indisputably nonprivileged topics about which he has relevant information. Contrary to the tenor of the Petition, the district court did not go rogue

31

in ordering this discovery. The Petition is without merit and the requested writ of mandamus should be denied.

32

April 17, 2023

Respectfully submitted,

/s/ Michael S. Carter
Michael S. Carter
OK Bar No. 31961
Matthew Campbell
NM Bar No. 138207, CO Bar No. 40808
mcampbell@narf.org
NATIVE AMERICAN RIGHTS FUND
1506 Broadway
Boulder, CO 80302
Telephone: (303) 447-8760
*Counsel for Respondents*

Samantha B. Kelty
AZ Bar No. 024110, TX Bar No. 24085074
kelty@narf.org
NATIVE AMERICAN RIGHTS FUND
950 F Street NW, Ste. 1050
Washington, DC 20004
Telephone: (202) 785-4166
*Counsel for Respondents*

/s/ Timothy Q. Purdon
Timothy Q. Purdon
N.D. Bar No. 05392
TPurdon@RobinsKaplan.com
ROBINS KAPLAN, LLP
1207 West Divide Avenue, Suite 200
Bismarck, ND 58501
Telephone: (701) 255-3000
Fax: (612) 339-4181
*Counsel for Respondents Spirit Lake Nation and Turtle Mountain Band of Chippewa*

/s/ Mark P. Gaber
DC Bar No. 988077
mgaber@campaignlegal.org
Molly E. Danahy
DC Bar No. 1643411
mdanahy@campaignlegal.org
Nicole Hansen
NY Bar 5992326
nhansen@campaignlegal.org
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Ste. 400
Washington, DC 20005
Telephone: (202) 736-2200
Fax: (202) 736-2222
*Counsel for Respondents*

Bryan Sells
GA Bar No. 635562
bryan@bryansellslsaw.com
THE LAW OFFICE OF BRYAN L. SELLS, LLC
PO Box 5493
Atlanta, GA 31107-0493
Telephone: (404) 480-4212
*Counsel for Respondents*

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) as it uses the proportionally spaced typeface of Times New Roman in 14-point font.

This brief complies with the type-volume limitation of Fed. R. App. P. 21(d) as it contains 6,975 words, excluding parts of the brief exempted by Fed. R. App. P. 21(a)(2)(c).

The electronic version of the foregoing Brief submitted to the Court pursuant to Eighth Circuit Local Rule 28(A)(d) was scanned for viruses and that the scan showed the electronic version of the foregoing is virus free.

Dated this 17th day of April, 2023.

/s/ *Mark P. Gaber*
Mark P. Gaber
*Counsel for Respondents*

34

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2023, I electronically submitted the foregoing **RESPONSE TO PETITION FOR WRIT OF MANDAMUS** to the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit for review by using the CM/ECF system and that ECF will send a Notice of Electronic Filing (NEF) to all participants who are registered CM/ECF users.

/s/ *Mark P. Gaber*
Mark P. Gaber
*Counsel for Respondents*

35